Good morning, your honors. I may please the court. My name is Connie. I'm here on behalf of Mr. Yang. Like the defendant in the preceding case, my client was convicted by jury of conspiracy and aiding and abetting, and the predicate offense for both crimes is the transportation of illegal aliens in furtherance of their unlawful presence in the United States. I would like to address first the fundamental issue of how the statute on the transportation offense should be interpreted. And it's still not clear to us what the government's position is on this issue. But our fundamental argument is there is an affirmative legislative policy that certain types of conduct of illegal aliens that are not criminalized by the statute, and that's the act of being transported by someone else, including the acts associated with being transported in a group. And without this affirmative legislative policy, the law of conspiracy and adding abetting is broad enough to criminalize simply an unlawfully present alien with simply being transported. If they paid for a ticket to be transported on the ferry, on the bus, on the train, if the transporter knows they're illegal aliens and they intend to further their unlawful stay, there'll be an agreement and a conspiracy. And by paying it and getting on the boat or ferry or train, it facilitates the commission of that offense. So automatically there'll be a criminal and a statute. It seems that's the government's position, but they don't say it. But we submit to the court that is not how the statute should be interpreted because of the statutory scheme and because of the legislative history. In the statute, there's no mention of criminalizing an unlawfully present alien for being transported. The immigration statute went through multiple amendments, and during one of the amendments, the prospect of criminalizing an alien for being employed without authorization was discussed, proposed, and rejected. And at that time, the rationale was basically we already have a system of removing aliens under the removal procedure. There's no need to overburden the system, and the result of criminalizing the aliens for being employed will be too harsh. So the understanding really from the congress is we have the statute. It punishes certain acts. It imposes criminal penalties for certain acts. But at the same time, we have a different system dealing with the acts of the unlawfully present aliens. And that's the distinction. That's the affirmative legislative policy we're arguing here. There is an exception to who can be prosecuted or what kind of conduct can be prosecuted under statute. And if we recognize that, then the next question is, what's the scope of this exception? Is it just limited to someone who pays a ticket, or does it extend to certain acts associated as incendiary to or inherent in the act of being transported? Well, let's look at the sufficiency of the evidence here against your client, Mr. Yang. Yes, Your Honor. All right. And so if we look at the basis of the evidence to be, it seems like a lot of it was connected to his wife. Is that correct? Yes, Your Honor. And that's pronounced, is it Wong? Yes. Okay. And apparently, from what I can tell, it looks like she had legal status from the very beginning. Is that correct? She initially had legal status. Yes. She had legal status. So I'm not sure I understand how the conviction here, how it could be related to any transporting by Mr. Yang of his wife, if she had legal status the whole time. So what happened is a little bit complicated, her history. So she initially has status under CW1, a work visa with an employer here. The employer then replied to renew her visa status, and it was denied. So at the time of the incident involved in this case, she did not have status. But at the same time, the employer had already filed an appeal of the denial. So that appeal was pending. Prior to the indictment, though, did everybody understand and agree that she was legally, she had status, legal status? So prior to the indictment, I think the appeal was successful, and everybody agreed that at that time, her status was restored because the appeal was successful. But I think for purpose of evaluating her status for applying for future visas, her status was basically considered, she never lost it. It's retroactive. And the jury was told that? I believe it's in one of the stipulations. Right, that's one of the stipulations. So then there's kind of another wrinkle in it, because her visa status, as I understand, it wouldn't permit her to travel outside of CNMI. That's correct. But she seemed to be on her way to Guam. Yes. So would she be permissibly legal within the context of being transported from Saipan to Guam? I think we're getting to an even more complicated issue is because she's doing something that violates the conditions of her visa, that's by the fact, has she actually at that time lost the status, if she had a status in the first place, if she lost that status, and lose that status by going to Guam. But we didn't actually address that, because we think that because at that time of the incident, she had no status, and the retroactive application doesn't suddenly, if there was a crime that was committed, it doesn't really change a criminal act into an innocent act. Now I'm confused, because I suppose the very simple question is, is the fact that she was given retroactive legal status in CNMI, does that affect whether he can be found guilty for transporting an undocumented person? I don't know the answer to that question. And we certainly didn't argue that below. Our argument is basically, I understand the question. So if we kind of have to put that aside, then he is transporting, he's arranging for the transport of someone other than himself, right? If we have to put that aside, no, that's not our position, not our arguments. We're still arguing that, yes, there are undisputed facts, stipulated facts. He paid for the deposit. He went to the meeting to negotiate the amount of deposit. And on the boat here, the captain was borrowing phones from all passengers, and he was one of them. Let's leave the phone out of it right now. Let's just get us from Saipan to the middle of the ocean. At that point, you're saying you really didn't argue this status situation. So he is arranging for the transport of someone else, right? I think our position is that he's not arranging that, he's paying for that, he's not doing arrangements. So he's just a ticket purchaser, in your view? Yes. And this is, I think, it's related to some of the questions that were asked in the previous argument is, that's the scope of the legislative policy that we're arguing is, we think there are certain acts that are incidental in here and that maybe is basic human interactions and relationship in today's society that go together with this affirmative legislative policy. Well, you've made this argument that there's some standard called inherent or incidental too. So in your view, how does that differ from what has been typically the Ninth Circuit standard, which is direct or substantial, which is set out under Moreno? Is there a difference between those two standards? I believe, yes. So my argument is, the statute, there are two parts of the interpretation. There is the affirmative legislative policy. That's what we're arguing about the inherent or incidental standard. And that policy, in your view, would permit him to arrange for his wife? Yes, if they're traveling together. And then there is a second part. That's the Moreno standard, the direct or substantial test, the connection test. That's the part where that's assumed that he didn't want to go to Guam himself. Let's just say only his wife wanted to go to Guam. He volunteered to steer the boat to take her to Guam. And then we have under Moreno, we're arguing that that's still not sufficient because of their relation. Not because they're, not that it's because husband and wife automatically they're exempt, because it's a basic human relationship. He's doing it not really to further the evasion of law to help her continue in the U.S. unlawfully, but he did it because this is his wife or someone else, if it's his friend or someone who asked, and he did, he was not paid for it. And there was no evidence they were escaping. They're trying to escape prosecution or try to evade the law. And the comparable cases we will say is, for example, the Moreno. For example, in the Moreno, if we change the fact that the foreman in Moreno, suppose he is a husband and one of the employees is his wife, driving his wife to work. And the Moreno, that wouldn't be sufficient. And in this case, my client wasn't even the captain. He was there as a passenger himself. So that's the second part of the statutory interpretation. Counselor, am I understanding your argument to be that because the other passenger was his wife, there is no liability on the statute? Not just because of that fact. It's because the acts he performed, they were acts that are inherent or incidental to that relation, basic human interactions. So you're saying there's an exception for basic human interactions to the statute? Yes. And that will be part of the affirmative legislative policy that we're arguing. If there isn't that exception, basically the statute is just too broad to cover basically everybody. Well, every illegal alien who lives with someone else, who interacts with someone else. Do you have a case that you're relying upon to support that argument? We, I think we, our argument is, they don't say specifically, but I think we see it somewhere, for example, in the Salinas Calderon case from the District of Kansas. From the District of Kansas. You don't have anything in the Ninth Circuit to support that argument? Well, the Ninth Circuit, I would still say it's the Moreno, although it's in Moreno, it was dealing with the inference of element, but there was a language about humanitarian reasons where someone driving an alien to a hospital or something like that, it shouldn't count. But that's not, the statute doesn't say anything about that. So it has to come from somewhere, and we think that's where it came from the affirmative legislative policy. There's just some kind of acts that people do as a human in a society that shouldn't be part of this, that's criminalized by the statute. Did you want to reserve the balance of your time? Yes, thank you. Again, may it please the Court, Eric O'Malley on behalf of the United States Appellee in this case. Mr. Yang argues as if there are no limiting principles on how the government would prosecute these cases, arguing somehow that it would criminalize the mere presence of someone who, for example, had overstayed the visa. But it ignores the most obvious limiting principle that most of the case law that addresses this particular statute focus on, and that is, what is the purpose of the transportation? Is the purpose of the transportation ordinary things that we do every day, go to the grocery store, go to McDonald's to buy a Big Mac, take the kids to or is the purpose to further the unlawful presence of the aliens? And in this case, I don't think that it's really disputable that the whole purpose, the only purpose of this particular transportation was to move these aliens from Saipan, where jobs were scarce, to Guam, where perceptually the jobs were plentiful and better paying. So we have the same situation here where there's a stipulation that the individual's transportation of himself or herself is not sufficient, correct? That was the order of how the jury was instructed, and we did not object to that. And you didn't object to it. So that's kind of a baseline. So the only way then to hold him liable is for the transportation of someone else, and it was focused on the wife, correct? We didn't focus on the wife at trial. The government's position is that he could have been held responsible for all of the others. But most of the overt acts were related to the wife in his case. They were, but the law of conspiracy holds that you don't have to know the full extent of your other co-conspirator actions. You only have to know and agree on the common purpose. And in this case, the evidence certainly was overwhelming that they all had the common purpose of getting the whole group, the team, to Guam. I don't want to put words in counsel's mouth, but I think I divined that with respect to the wife's immigration status, he said he would be potentially unsure about what impact that had. What is the government's view? The government's view is that no, it would not have any impact for a couple of different reasons. First, at the time of the transportation, she had the criminal intent, he had the criminal intent, because in both of their knowledge at the time was they did not have status even to be in Saipan. More importantly, none of their statuses allowed them to go to Guam. So, you know, that I think is kind of the bottom line. Her status was restricted to CNMI, correct? It was, it was, your honor. And her status was a mess. And I think that was probably certainly taken into consideration by this jury that decided that in degrees of participation, her participation was minimal, more akin to a fee-paying passenger, whereas both Wang and Yang's role was more involved and elevated them to the position of participant and not just mere passenger. Can I just go back to your one statement? You said at the time of transport, they knew at the time she didn't have status. But my understanding was at the time of the indictment, that this immigration snafu had been cleared up. Is that not true? I don't know the exact sequence. My recollection is that we indicted and then learned after the indictment that her status had been granted and applied retroactively to cover all of the time that she was out of status. Are you sure that wasn't before indictment? I don't want to speak with any certainty, but that was my recollection. Let's just say, okay, you acknowledge that her status, the retroactivity of it, made her status lawful at the time that this occurred? In the CNMI. Yes. Okay. So she had lawful status in the CNMI at the time that this occurred, correct? Retroactively, yes. And so you proceeded with indictment, or let's just say you found out later, but you proceeded with the trial knowing that, correct? Correct. Okay. So I'm just trying to figure out how can someone be liable, criminally liable, for transporting someone, which one of the elements, I believe, of defense, who is here unlawfully. How is that possible when she had legal status? Well, because they were trying to go to Guam. They were trying to go to a place where she didn't have lawful status, where she wouldn't have the ability to work lawfully. So because that was the purpose, the objective of the conspiracy, and again, the nature of a conspiracy doesn't have to be complete. It's the agreement that is important. It seemed like a lot of your overt acts and arguments were based on her lawful status in CNMI, but am I incorrect in how I reviewed that? I'm sorry. It didn't look from what I read in terms of the indictment and the other pleadings and what the district court and what was presented, it looked like the focus was on her status in the CNMI. You're saying otherwise. I'm saying that under the law, none of their permits, whether they were overstays or not, none of their permits allowed them to go to Guam. That is something that they all had knowledge of. The reason why they went by boat and engaged in this very dangerous activity was because they knew that they could not lawfully go by plane, which is much easier, much quicker, and much safer. And because they chose to engage in this criminal conduct, they put many lives at risk, not only their own, but all of those that had to go out, find them, and rescue them. We don't have the benefit of the closing argument for some reason, although we tried to get it, but we don't seem to have it in the record. So I don't know what was argued at closing, but was it presented during trial that when she left CNMI that her status would not be lawful? I don't recall that being an issue that was argued one way or the other. I don't recall arguing that on behalf of the government. Our position is that at the time that she engaged in this activity, her mental awareness, and more importantly, the defendant, Mr. Yang's mental, you know, his understanding was that neither he nor his wife had lawful status. He had no status. He was out of status. He never got retroactive status, so he was definitely out of status. But at the time that they engaged in this conspiracy, his understanding was that she was unlawfully present. That aside, neither of them, under any circumstances, were allowed to go to Guam. That's what's making this a little bit complicated for me, and I'll just speak for myself, in that it's clear that some, most of them, I think, did not have status, legal status in the CNMI. Is that correct? That's correct. But she did? Retroactively, yes. Yeah, but it doesn't matter. I mean, you're the government. You represent the government. It said she had status from the beginning, so the retroactive, I appreciate, but she had status at the time, correct? She had criminal intent at the time. How do you have criminal intent when you have legal status? How do you have, and that's what I'm trying to drill down on, how do you have intent when you have legal status, at least when it, with respect to CNMI? At the time, she, and more importantly, her husband, believed that she did not have legal status. He believed that she was here unlawfully, and as to go to his intent, he entered a conspiracy to further her unlawful presence. Yeah, I just, I'm just having trouble, legally, whether that's a legal possibility for someone to transport somebody, whether they had intent, who was here, who had lawful status. You can still engage in unlawful behavior, even if you have lawful status, and that's what happened. Well, in this particular case, when you're transporting someone, and the main element is that they didn't have lawful status, that's what becomes a little complicated for me, and that's what I'm trying to sort out. If you have criminal intent at the time that you commit the and he did, he did not know that she would be granted retroactive status. The harm is the same. The harm is they engage in dangerous behavior that requires a search and rescue, and has the potential harm of allowing a group of unlawful aliens make it to Guam, where that frustrates the purpose of a legitimate government function, which is the detection and detention and removal of aliens who are unlawfully present. So does it matter, then, the timing of when the notice came that she would get unlawful status, and it would be retroactive? Does it matter as to whether that was time-wise, vis-a-vis the actual transport, or the indictment, or at some other point? Only if they, there was some element of knowledge that they somehow knew that the status would be coming, and again, we're focusing only on Mr. Yang's contract, and the timing, certainly, it's a complicated issue, and when they grant it. Maybe you can help me with this complicated issue, because where in the record would we be able to reconstruct the timeline? That's what I was trying to do. It shouldn't be that hard. I can't remember if it was actually in the stipulations, the exact dates of when everything was granted versus the indictment, but the harm, we want to focus on the harm here. What is the harm? They intended to engage in criminal conduct, what in their mind they knew to be criminal conduct on the day of the transportation. That caused harm. That put lives in danger. That risked a group of aliens making it to Guam and escaping, being allowed to further their unlawful presence. That is the harm, regardless of whether or not Mr. Yang's wife was retroactively granted a lawful status to be just in the scene of mine. They made the decision to go to Guam so that they could have better job prospects in Guam, and I think it bears noting that in regards to Mr. Yang's argument that there should be some type of exception for spouses or incidental aliens. In this case, of course, that's not written in the law anywhere, and as they say, if the legislature doesn't act, the court should be very reluctant to act. It looks like under the law, it says the underlying transportation offense requires that the transported alien is in the United States unlawfully. So was Ms. Wang in the United States unlawfully at the time that this occurred? In the minds of the defendants? No, I just, I appreciate your intent. Was she unlawful? Because I think this is more of a legal question here, okay? So was she here unlawfully at the time of this offense? She was retroactively lawfully present in the scene of mine, but she was not lawfully allowed to go to any other part of the United States, which is what the conspiracy was to do. And so this is what I'm trying to drill down on. It says, so one of the elements is underlying transportation requires that the transported alien is in the United States unlawfully. Where does it say that the element includes and that she would not have been unlawful had she been transported? The element is whether or not someone was being transported to further their unlawful presence. And if she was, the purpose of the conspiracy was to go to Guam, then the purpose, she would have been unlawfully present when this moment that she stepped foot in Guam. And that was the common purpose of the conspiracy. Yeah, I'm just struggling a little bit. If what's required is that she was not, she would not be here lawfully. The language is the is in the United States unlawfully. And it does not appear, even if she intended to go to Guam, where she wouldn't have been unlawful, that she was unlawfully. But maybe that's what I was trying to figure out. And I wanted to give you an opportunity to answer. It is a curious question. And I'll just step back and say, he was also responsible for engaging in a conspiracy and a venture that involved the transportation of not just his wife, but an additional seven. And if we focus on the others, what's the best evidence excluding the wife, because it looked a lot of it was directed toward the wife. What's the best evidence like you went through with us on the other case regarding the others? The same evidence that the court recited in his order that he went to the meetings, he made the payments, he went to the subgroup and participated in the negotiation. But the payments were for he and his wife. Yes. Okay. So not for the others. He was furthering again, it was a team effort. Once you join the criminal venture, the individual objective becomes the common objective. So I think I found a stipulation. And there's two parts to it. One part talks about the what a CW-1 visa or status holder is, and CW-2 that relates to the dependents. But it doesn't authorize you to or waiver. Otherwise, you're deemed to have violated his or her CW-1 or 2 status. So is that the best statement that we should look at in terms of evaluating what is the legal impact of this retroactive conferral of a CW-1? That is an accurate recitation of what a CW permit allows you to do. Thank you. Your Honor, I do have a citation for the Li Pingping Zhang case. Yes, thank you. It's a 454-F-APPX-591. F what? It's unpublished. It was not even cited in your brief. If I go it again, it's 454-F-APPX-591. Okay. Well, we'll take a look at it for whatever interesting value it might have. Thank you, Your Honors. On the timeline of the status of Mr. Yang's wife, it's in the second volume of the ER on page 92, paragraph 9. Towards the end, it says on January 22, 2024, USCIS is in denial granting her CW-1 status extension and apply it retroactively. And the indictment in this case was filed in February, so a month afterwards. So that would be the timeline. And then how do you square that though with the scope of the visa, which does not permit a CW-1 visa holder to leave CNMI or travel outside of there, including to Guam? So that's the part where I think once she does something that's inconsistent with the conditions of visa, then she'll be in violation. But I think going back to the statute, there's no mentioning of the type of aliens that are being transported. It doesn't say the alien. It includes aliens who have violated their conditions of the visa. And I see that time is almost up. If I may just say briefly something in response to the government's argument. Thank you. So the government says there's a limiting principle. They're not going to prosecute people for transferring people to go buy groceries or do something like in their everyday life. But that's something about their discussion. It's not about the statute. They still haven't pointed to anything in the statute that makes them make this distinction based on their position. Anything an unlawful alien does, unless they're going to report themselves to the authorities, is probably can be viewed by someone as inference of their own unlawful state in the United States. That's all I have. Thank you. Thank you. Thank you. Is it Mr. Nye? Thank you, Mr. Nye and Mr. O'Malley. Thank you again. Appreciate the oral argument presentations here today. The case of United States versus Yang is now submitted and we are adjourned. Thank you all. Thank you, Your Honor.
judges: MURGUIA, McKEOWN, RAWLINSON